# UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

*IN RE: CUMMINGS MANOOKIAN, PLLC,*
*Debtor*

-----------------------

*BRIAN CUMMINGS and CUMMINGS MANOOKIAN, PLLC,*
*Plaintiffs-Appellees,*

*JEANNE ANN BURTON,*
*Trustee-Appellee*

*v.*

*BRETTON KEEFER and AFSOON HAGH,*
*Defendants-Appellants*

## Case No. 24-5606

On Appeal from
Keefer v. Cummings, et al.
Case Nos. 3:23-cv-00961, 3:23-ap-90036
U.S. District Court Judge Aleta A. Trauger

## BRIEF OF APELLANTS

John Spragens (TN Bar No. 31445)
Spragens Law PLC
311 22nd Ave. N.
Nashville, TN 37203
T: (615) 983-8900
F: (615) 682-8533
john@spragenslaw.com

*Attorney for Appellants*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure and Sixth Circuit Rule 26.1, counsel for Appellants certifies that no party or debtor to this appeal is a subsidiary or affiliate of a publicly owned corporation and no publicly owned corporation that is not a party to this appeal has a financial interest in its outcome.

## TABLE OF CONTENTS

I.   TABLE OF AUTHORITIES ..............................................3

Cases.........................................................................4

Statutes.....................................................................6

II. STATEMENT IN SUPPORT OF ORAL ARGUMENT ........6

III. JURISDICTIONAL STATEMENT ................................. 7

IV. STATEMENT OF THE ISSUES ..................................... 8

V. STATEMENT OF THE CASE ......................................... 8

VI. SUMMARY OF THE ARGUMENT ............................... 13

VII. ARGUMENT .............................................................. 14

A.   Summary Judgment is Appropriate Where All
     Claims, as Here, Are Subject to Arbitration. ............. 14

B.   The Federal Arbitration Act Provides for Enforcement
     of the Arbitration Agreement and
     Covenant-Not-to-Sue. .............................................. 16

C.   Plaintiff Cummings, as well as Co-Defendant
     Cummings Manookian, entered into an Enforceable
     Arbitration Agreement and Covenant-Not-to-Sue
     with the Defendants. ................................................. 18

D.   The Covenant-Not-to-Sue and the Arbitration
     Agreement Apply to the Claims Raised in this Case. .. 20

E.   The Case Should Have Been, and Should Be,
     Dismissed with Prejudice, or in the Alternative, the
     Court Should Stay the Action. .................................... 23

F. The Bankruptcy Court Abused its Discretion By
     Substituting Its Arguments for the Litigants' in
     Violation of the Party Presentation Rule. .................. 25

G.   The District Court Erred By Failing to Consider,
     Address, or Adjudicate the Bankruptcy Court's
     Violation of the Party Presentation Rule. .................. 29

VIII. CONCLUSION ....................................................... 30

# I.   **TABLE OF AUTHORITIES**

## Cases

*Allen v. Tenet Healthcare Corp.*, 370 F. Supp. 2d 682 (M.D. Tenn. 2005) ...................................................................23

*Allied-Bruce Terminix Cos., Inc. v. Dobson,* 513 U.S. 265, 277 (1995) .......16

*Arnold v. Arnold Corp. Printed Commc'ns for Bus.*, 920 F.2d 1269, 1275–76 (6th Cir. 1990)....................................................23

*Asbell v. Educ. Affiliates*, No. 3:12-cv-00579, 2013 WL 1775078, at *18 (M.D. Tenn. Apr. 25, 2013)..........................................24

*AT&T Techns., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986)...........................................................17

*Brown v. Heartland Emp't Servs.*, No. 19-11603, 2020 WL 2542009, *3 (E.D. Mich. May 19, 2020) ..........................................20

*Brubaker v. Barrett*, 801 F. Supp. 2d 743, 758 (E.D. Tenn. 2011).............. 21

*Circuit City Stores*, 532 U.S. at 105..............................................17

*Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56 (2003) ...........................16

*Cronk v. TRG Customer Sols., Inc.*, No. 1:17-cv-00017, 2017 WL 5517259, at *3 (M.D. Tenn. Nov. 17, 2017)...................................18

*Dawson v. Rent-A-Ctr., Inc.*, 490 F. App'x 727, 729 (6th Cir. 2012)...........18

*Dean v. Draughons Jr. Coll., Inc.*, 917 F. Supp. 2d 751, 764 (M.D. Tenn. 2013) ...................................................................23

*Doe v. HCA Health Servs. of Tenn., Inc.*, 26 S.W.3d 191, 196 (Tenn. 2001) ................................................... 19

*Equal Employment Opportunity Comm'n v. Waffle House*, 534 U.S. 279, 289 (2002). ................................................... 20

*First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)............19

*Gentek Bldg. Prods, v. Sherwin-Williams Co.*, 491 F.2d 320, 330 (6th Cir. 2007)...................................................14

*Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 26 (1991).............18

*Green v. Ameritech Corp.*, 200 F.3d 967, 973 (6th Cir. 2000)..............15, 24

*Greenlaw v. United States,* 554 U.S. 237, 128 S.Ct. 2559, 171 L.Ed.2d 399 (2008)...................................................27

*Green Tree Financial Corp. v. Randolph*, 531 U.S 79, 90 (2000)...............17

*Highlands Wellmont Health Network, Inc. v. John Deere Health Plan, Inc.*, 350 F.3d 568, 573 (6th Cir. 2003) .......................................................18

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 22 (1983) ...................................................17, 21

*Multiband Corp. v. Block*, No. 11-15006, 2012 WL 1843261, at *5 (E.D. Mich. May 21, 2012)...................................................14

*Ohio Nat'l Life Ins. Co. v. U.S.*, 922 F.2d 320, 325 (6th Cir. 1990).............15

*Ozormoor v. T-Mobile USA, Inc.,* 354 F. App'x 972, 975 (6th Cir. 2009) ...................................................23

*Rent-A-Ctr. West, Inc. v. Jackson*, 561 U.S. 63, 67–68 (2010)...................17

*RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996) ...........................................................................................15

*Rogers v. Stratton Indus., Inc.* 798 F.2d 913, 915 (6th Cir. 1986)...............15

*Rutter v. Darden Restaurants, Inc.*, No. CV 08-6106 AHM (SSx), 2008 WL 494043, at *9 (C.D. Cal. Nov. 18, 2008).......................................................15

*SL Tennessee LLC v. Ochiai Georgia*, LLC, No. 3:11-cv-340, 2012 WL 381338, at *7–8 (E.D. Tenn. Feb. 6, 2012) ..................................................24

*United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994)...........................14

*United States v. Sineneng-Smith*, 140 S. Ct. 1575, 1579 (2020) ............25-27

*Wilks v. Pep Boys,* 241 F. Supp. 2d 860, 863 (M.D. Tenn. 2003) ............. 19

*Winn v. Tenet Healthcare Corp.*, No. 2:10-cv-02140-JPM-cgc, 2011 WL 294407 (W.D. Tenn. Jan. 27, 2011)..................................................................14

*Wood v. Milyard*, 566 U.S. at 472–73, 132 S. Ct. at 1833–34......................27

**Statutes**

9 U.S.C. § 2. ......................................................................................................16

9 U.S.C. § 4.......................................................................................................18

9 U.S.C. § 3.......................................................................................................23

## II.  STATEMENT IN SUPPORT OF ORAL ARGUMENT

Appellants Bretton Keefer and Afsoon Hagh respectfully request oral argument as it was denied to them in the lower courts. The Bankruptcy Court adjudicated the claim without a hearing and not upon any argument presented by the parties, but upon a jurisdictional argument that the Court formulated and raised *sua sponte*. Appellants subsequently raised that party-presentation issue to the District Court, which denied Appellants the opportunity for oral argument and omitted the party-presentation argument from consideration in its ruling. Appellants respectfully request the opportunity to present their argument.

## III.  JURISDICTIONAL STATEMENT

Appellants Bretton Keefer and Afsoon Hagh ("Appellants") appeal from the District Court's June 17, 2024 Order affirming the Bankruptcy Court's Denial of Appellants' Motion to Dismiss, Case No. 3:23-cv-00961 (M.D. Tenn.) (Doc. 18) (App'x at 184). The Bankruptcy Court had jurisdiction over the matter under 11 U.S.C. §§ 1334 & 157. The Decision is a final order appealable under 28 U.S.C. § 158 (a)(1) and/or an order denying a motion to compel arbitration, which the District Court properly found was immediately appealable, *see* 9 U.S.C. § 16(a)(1). The Court has jurisdiction to hear the appeal under 28 U.S.C. § 158 (d)(1) and/or 9 U.S.C. § 16(a)(1).

Appellants timely filed their Notice of Appeal on July 1, 2024, within 14 days of the entry of the District Court Order (1) denying Appellants' request for oral argument and (2) affirming the Bankruptcy Court's September 5, 2023 Order Denying the Appellants' Motion to Dismiss in Cummings v. Keefer et al., Adv. Pro. No. 3:23-ap-90036 (Bankr. M.D. Tenn.) (Adv. Pro. Doc. No. 20).

## IV.   STATEMENT OF THE ISSUES

1.      Whether the District Court erred in its June 17, 2024 Order affirming the Bankruptcy Court's September 2023 Order (Adv. Pro. No. 20) denying the Motion to Dismiss and declining to compel arbitration.

## V.   STATEMENT OF THE CASE

**A.   Mr. Keefer and Mr. Cummings form, and dissolve, an attorney-client relationship; Ms. Hagh subsequently and successfully settles Mr. Keefer's malpractice case.**

This lawsuit is filed by an attorney, Brian Cummings, against his former client and former co-counsel in a state medical malpractice action. The former client is Bretton Keefer, the son of Chesta Shoemaker – a middle-aged woman who died after receiving negligent care at Vanderbilt University Medical Center ("Vanderbilt" or "VUMC"). The former co-counsel is Afsoon Hagh, the lawyer who represented Mr. Keefer throughout his action against

Vanderbilt, and who secured a settlement on his behalf (the "Malpractice Settlement").

Mr. Cummings withdrew from representing Mr. Keefer early in the discovery phase of the litigation when Mr. Keefer rebuffed Mr. Cummings' persistent pressure to settle the matter for pennies on the dollar, and Mr. Cummings was unwilling to continue contributing financially or professionally to the litigation of the matter. Over the next fourteen months, Ms. Hagh continued to prosecute the matter aggressively at her own expense, including hiring nationally-renowned trial attorney John Edwards to serve as her co-counsel. The case ultimately settled on the eve of trial as Ms. Hagh and Mr. Edwards were preparing to pick a jury in front of Davidson County Circuit Court Judge Joseph Binkley, Jr.

**B.    Mr. Cummings violates the terms of his contract with Mr. Keefer—which Mr. Cummings himself drafted—and demands a percentage of the monetary settlement secured by Ms. Hagh.**

After learning of the settlement that he did not assist in achieving, and despite having actively concealed significant instances of malpractice on his own part, Mr. Cummings initiated this lawsuit asking that a Court award him some unspecified portion of the Malpractice Settlement funds. Mr. Cummings did so despite having contractually disclaimed his rights to (1) bring such claims in any Court or (2) seek any award in his favor.

First, Mr. Cummings expressly and unambiguously entered into a contract never to file litigation "arising out of his representation of Mr. Keefer"—the sole subject of the pending lawsuit. Second, Mr. Cummings drafted and insisted upon a clause in the same contract requiring that claims "arising out his representation of Mr. Keefer" be resolved exclusively through mediation and then binding arbitration. And third, Mr. Cummings drafted and agreed upon a provision that he would not receive a portion of any settlement if he withdrew from the Keefer representation, which he did.

By Mr. Cummings' own contractual demands, any dispute "arising out of his representation of Mr. Keefer" is specifically and unambiguously barred from adjudication in any Court.

## C. The Bankruptcy Court allows Mr. Cummings' claim to proceed despite its own lack of jurisdiction.

The Bankruptcy Court (or any court) thus lacked subject-matter jurisdiction to hear Mr. Cummings' claims precisely because Mr. Cummings preemptively contracted that he could not and would not present any such claims to this Court in the form of two express clauses. The first, a covenant-not-to-sue, clearly states: "Consequently, neither the client nor the attorneys in this Attorney-Client relationship can file litigation over or about any alleged or real dispute within the Attorney-Client relationship." *Attorney-*

*Client Agreement*, April 19, 2017, Brian Cummings to Brett Keefer, App'x at 71. Emphasis added.

The second clause, a binding mediation-arbitration provision, states: "any such dispute that cannot be resolved between us must first be taken to mediation for a good-faith attempt at resolving the dispute, and, if mediation does not completely resolve the dispute, any ongoing disputed issues must be submitted for final disposition by an agreed-to arbitrator for binding arbitration." *Attorney-Client Agreement*, April 19, 2017, Brian Cummings to Brett Keefer, App'x at 71. Emphasis added.

Despite himself drafting and pressing these clauses onto Mr. Keefer, Cummings Manookian, and Afsoon Hagh, where he unambiguously covenanted never to sue over his representation in the malpractice suit, Mr. Cummings then filed suit against Mr. Keefer, Cummings Manookian and Afsoon Hagh over his representation in the malpractice suit—notwithstanding the valid, enforceable arbitration agreement, the court lacks subject matter jurisdiction over the case. The Bankruptcy Court should have dismissed Mr. Cummings' Complaint with prejudice because all of its claims are expressly covered by the broad covenant-not-to-sue and mediation-arbitration clauses that Mr. Cummings, himself, inserted into the contract governing his rights and remedies relative to his employment in the

Malpractice Suit. In the alternative, as Appellants Keefer and Hagh (hereinafter "Appellants") argued below, the Bankruptcy Court should have dismissed the action and issued an order compelling mediation and arbitration.

Appellants moved to dismiss the Complaint in this matter for lack of subject-matter jurisdiction as a result of the binding arbitration agreement on May 4, 2023. App'x at 47. Brian Cummings responded on August 2, 2023 in opposition, arguing alternatively that there was no arbitration agreement and that the arbitration agreement was waived. App'x at 101. Cummings Manookian, through Jeanne Burton the Trustee, filed no response.

On August 30, 2023, the Court issued it ruling from the bench, finding that "arbitration would frustrate the purpose of the Bankruptcy Code" despite no party to this matter having ever asserted the same or made any timely argument on that point, including the Debtor. App'x at 210.

## D. The District Court Affirms the Bankruptcy Court's Erroneous Ruling.

Appellants then filed their Notice of Appeal on September 8, 2023, within 14 days of the entry of the Decision as prescribed by Fed. R. Bankr. P. 8002. App'x at 213. Following reassignment of the case and a round of briefing, the District Court on June 17, 2024 issued a Memorandum Opinion and Order (1) denying Appellants' request for oral argument and (2)

affirming the Bankruptcy Court's September 5, 2023 Order Denying the Appellants' Motion to Dismiss in Cummings v. Keefer et al., Adv. Pro. No. 3:23-ap-90036 (Bankr. M.D. Tenn.) (Adv. Pro. Doc. No. 20).

## VI.  SUMMARY OF THE ARGUMENT

Appellants seek to vindicate the terms of an Attorney-Client agreement which was drafted and signed by the Appellee. The Appellants' request to dismiss and/or compel arbitration is appropriate because Appellee Cummings contracted to arbitrate any and all claims arising from his representation of Appellant Keefer. The covenant-not-to-sue, which Appellee Cummings himself drafted and subsequently violated, is enforceable under the Federal Arbitration Act and encompassed the claims raised by Appellants.

Rather than dismiss Appellee's claims with prejudice, as was appropriate, the Bankruptcy Court abused its discretion and violated the party presentation rule by formulating *sua sponte*, and then relying upon, original arguments not raised by either party.

The District Court compounded this error by not only failing to analyze or adjudicate Appellants' party-presentation argument, but by erasing it entirely from its Memorandum & Order. Appellants respectfully request that this Court enforce the covenant-not-to-sue—as drafted by the Appellee—and

the agreement to arbitrate and dismiss Appellee's claims for lack of jurisdiction.

## VII. <u>ARGUMENT</u>

### A. Dismissal Is Appropriate Where All Claims, as Here, Are Subject to Arbitration.

The motion to dismiss filed with the Bankruptcy Court and subject to this appeal is based on Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction, or in the alternative, Rule 12(b)(6) for failure to state a claim.

Courts in the Sixth Circuit permit motions to dismiss pursuant to a covenant-not-to-sue or arbitration agreement to be brought as motions to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1). *See, e.g., Winn v. Tenet Healthcare Corp.*, No. 2:10-cv-02140-JPM-cgc, 2011 WL 294407 (W.D. Tenn. Jan. 27, 2011); *Multiband Corp. v. Block*, No. 11-15006, 2012 WL 1843261, at *5 (E.D. Mich. May 21, 2012).

Rule 12(b)(1) motions to dismiss fall into two categories: facial attacks and factual attacks. *Gentek Bldg. Prods, v. Sherwin-Williams Co.*, 491 F.2d 320, 330 (6th Cir. 2007). Unlike a facial attack, a factual attack does not challenge the sufficiency of the pleading, but the factual existence of subject matter jurisdiction. *U.S. v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994). "[N]o

presumptive truthfulness applies to factual allegations and the court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Id.* (citation omitted). In reviewing factual motions, "a trial court has wide discretion to allow affidavits, documents, and even a limited evidentiary hearing to resolve disputed jurisdictional facts." *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990).

With either challenge (facial or factual), the plaintiff bears the burden of proving that jurisdiction exists. *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996); *see also Rogers v. Stratton Indus., Inc.* 798 F.2d 913, 915 (6th Cir. 1986).

Where, as in the instant case, a trial or bankruptcy court lacks jurisdiction over a plaintiff's claims pursuant to Rule 12(b)(1), the complaint also fails to state a claim upon which relief can be granted pursuant to Rule 12(b)(6). Accordingly, "[w]hen all claims made in the litigation are subject to arbitration, the court may choose to dismiss the action in its entirety for failure to state a claim under Rule 12(b)(6)." *Rutter v. Darden Restaurants, Inc.*, No. CV 08-6106 AHM (SSx), 2008 WL 494043, at *9 (C.D. Cal. Nov. 18, 2008). **In fact, "[t]he weight of authority clearly supports dismissal of the case when all of the issues raised in the district court must be submitted to arbitration."** *Green v. Ameritech Corp.*,

200 F.3d 967, 973 (6th Cir. 2000) (quoting *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992)). (emphasis added).

**B.    The Federal Arbitration Act Provides for Enforcement of the Arbitration Agreement and Covenant-Not-to-Sue.**

The Federal Arbitration Act ("FAA") applies to agreements "involving commerce." 9 U.S.C. § 2. The FAA provides in relevant part:

> A written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2. The "term 'involving commerce' in the FAA [is] the functional equivalent of the more familiar term 'affecting commerce' – words of art that ordinarily signal the broadest permissible exercise of Congress' Commerce Clause power." *Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56 (2003). For the FAA to apply, the transaction that the contract evidences need only affect interstate commerce. *Allied-Bruce Terminix Cos., Inc. v. Dobson,* 513 U.S. 265, 277 (1995).

The contract at issue here clearly "affects commerce." It is an engagement agreement between a law firm, its lawyers, and a client for the purpose of bringing suit against one of the largest hospitals and health care

providers in the Southeast. Accordingly, each of the engagement agreements implicated "involved commerce" and the FAA is controlling.

In enacting the FAA, Congress intended to overcome general reluctance to enforce arbitration agreements. *Allied-Bruce Terminix Cos.*, 513 U.S. at 270. The FAA establishes the types of arbitration agreements that are enforceable and provides that:

> [a] written provision in any contract . . . involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."

9 U.S.C. § 2; *see also Circuit City Stores*, 532 U.S. at 105 (finding that the use of agreements to resolve matters through mandatory arbitration is well-recognized, valid, and enforceable); *Rent-A-Ctr. West, Inc. v. Jackson*, 561 U.S. 63, 67–68 (2010) (arbitration agreements must be enforced according to their terms). The FAA places arbitration on equal footing with contracts and establishes a federal policy in favor of arbitration. *See, e.g., Green Tree Financial Corp. v. Randolph*, 531 U.S 79, 90 (2000); *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 22 (1983).

Arbitration will generally be ordered "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT&T Techns., Inc. v.*

*Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986). Accordingly, any doubts regarding the scope of arbitrable issues should be resolved in favor of arbitration. *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24–25. Both the United States Supreme Court and the United States Court of Appeals for the Sixth Circuit recognize this concept and have applied a liberal presumption in favor of arbitrability. *See Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26 (1991); *Dawson v. Rent-A-Ctr., Inc.*, 490 F. App'x 727, 729 (6th Cir. 2012).

"When faced with a motion to compel arbitration, a district court must follow the procedure set forth in [S]ection 4 of the FAA . . . ." *Highlands Wellmont Health Network, Inc. v. John Deere Health Plan, Inc.*, 350 F.3d 568, 573 (6th Cir. 2003). "[I]f a litigant establishes the existence of a valid agreement to arbitrate, the district court must grant the litigant's motion to compel arbitration and stay or dismiss proceedings until the completion of arbitration." *Cronk v. TRG Customer Sols., Inc.*, No. 1:17-cv-00017, 2017 WL 5517259, at *3 (M.D. Tenn. Nov. 17, 2017) (citing *Glazer v. Lehman Bros., Inc.*, 394 F.3d 444, 451 (6th Cir. 2005)).

**C.    Plaintiff Cummings, as well as Co-Defendant Cummings Manookian, entered into an Enforceable Arbitration Agreement and Covenant-Not- to-Sue with the Defendants.**

The parties' arbitration agreement is valid and enforceable. The FAA requires courts to compel arbitration "in accordance with the terms of the agreement" upon the motion of either party to the agreement, consistent with the principal that arbitration is a matter of contract. 9 U.S.C. § 4. A federal court must generally look to the relevant state law on the formation of contracts to determine whether there is a valid arbitration agreement under the FAA. *See, e.g., First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995).

Under Tennessee law, a contract is formed when the parties have a meeting of the minds – an offer, an acceptance, and consideration. *See Doe v. HCA Health Servs. of Tenn., Inc.*, 26 S.W.3d 191, 196 (Tenn. 2001) (setting forth the requirements for contract formation under Tennessee law). Here, an explicit offer and acceptance occurred. Cummings literally drafted and then agreed to all of the terms within the engagement agreement, including the specific terms prohibiting the litigation of any claim in favor of a mediation and then binding arbitration. (Appendix to Appellant's Opening Brief, RE 12, Page ID # 5497).

There was also valid and ample consideration for both the covenant-not-to-sue and the arbitration agreement. Mr. Keefer was provided with representation by attorneys, and the attorneys were provided with the

payment in the form of a contingency fee in a significant wrongful death suit. In any event, a mere mutual agreement not to litigate is routinely considered sufficient consideration for purposes of an arbitration agreement. *See, e.g., Wilks v. Pep Boys,* 241 F. Supp. 2d 860, 863 (M.D. Tenn. 2003) (explaining that mutual promises to arbitrate claims constitutes adequate consideration); *Brown v. Heartland Emp't Servs.*, No. 19-11603, 2020 WL 2542009, *3 (E.D. Mich. May 19, 2020) (noting that "[t]he Sixth Circuit has found in numerous cases that mutual promises to arbitrate claims constitute bilateral consideration").

## D. The Covenant-Not-to-Sue and the Arbitration Agreement Apply to the Claims Raised in this Case.

Plaintiff's claims here fall squarely within the scope of the parties' covenant-not-to-sue and arbitration agreement and are expressly contemplated by the 2017 and 2019 engagement agreements. (See, Appendix to Appellant's Opening Brief, RE 12, Page ID # 5495-5502). While Mr. Keefer never accepted it, it is worth noting that the engagement agreement Mr. Cummings asked him to sign in 2020 included a verbatim provision. (*Id.* at Page ID # 5504-5507). There is simply no doubt that Mr. Cummings, throughout the entire course of his representation and relationship with the Defendants, agreed that he would never litigate the very claims he has

brought in this case: disputes arising out of his representation of Brett Keefer.

The Supreme Court has held: "absent some ambiguity in the agreement . . . it is the language of the contract that defines the scope of dispute subject to arbitration." *Equal Employment Opportunity Comm'n v. Waffle House*, 534 U.S. 279, 289 (2002). Moreover, in reviewing the scope of the arbitration agreement, the court must be guided by the principle that arbitration agreements are favored and are to be broadly construed with doubts being resolved in favor of coverage. *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648–50 (1986); *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24–25.

"In the Sixth Circuit, the test for determining whether a dispute falls within the scope of a broad arbitration clause is if 'an action can be maintained without reference to the contract or relationship at issue, the action is likely outside the scope of the arbitration agreement – along with the presumption in favor of arbitrability and the intent of the parties.'" *Brubaker v. Barrett*, 801 F. Supp. 2d 743, 758 (E.D. Tenn. 2011) (quoting *NCR Corp. v. Korala Assocs., Ltd.*, 512 F.3d 807, 814 (6th Cir. 2008)).

Here, Mr. Cummings' own Complaint does not and cannot exist without reference to the attorney-client relationship or engagement

agreements at issue. Indeed, the covenant-not-to-sue and arbitration provisions expressly informed Mr. Cummings (its drafter) that they cover all claims and controversies arising out of the attorney-client relationship: "potential" or "real." (Appendix to Appellant's Opening Brief, RE 12, Page ID # 5497). It is hard to imagine more broadly applicable language in a contract between an attorney and client than the following:

> Consequently, neither the client <u>nor the attorneys in this Attorney-Client relationship can file litigation over or about any alleged or real dispute within the Attorney-Client relationship</u>, and the forum for any such dispute must first be a good-faith mediation and then binding arbitration.

(*Id.*) Emphasis added.

**Mediation and Binding Arbitration of Any Attorney-Client Disputes**

While this is not expected or foreseeable here, sometimes attorneys and their clients develop a potential or a real dispute within their Attorney-Client relationship. Should any such dispute arise within this Attorney-Client relationship, you agree (as do we) that any such dispute that cannot be resolved between us must first be taken to mediation for a good-faith attempt at resolving the dispute, and, if mediation does not completely resolve the dispute, any ongoing disputed issues must be submitted for final disposition by an agreed-to arbitrator for binding arbitration. Consequently, neither the client nor the attorneys in this Attorney-Client relationship can file litigation over or about any alleged or real dispute within the Attorney-Client relationship, and the forum for any such dispute must first be a good-faith mediation and then binding arbitration.

Put simply, Mr. Keefer and Mr. Cummings did not have a relationship outside of their attorney-client relationship. Moreover, and notably, the clauses expressly cover any and all claims by "any attorneys" in the attorney-

client relationship "about... or within the attorney-client relationship." This broad, encompassing language applies to Defendants Hagh and Cummings Manookian as well. Accordingly, all of Mr. Cummings' claims fall within the scope of the covenant-not-to-sue and arbitration provisions he drafted and insisted upon.

**E.     The Case Should Have Been, and Should Be, Dismissed with Prejudice, or in the Alternative, the Bankruptcy Court Should Have Stayed the Action.**

Because Mr. Cummings' claims are both barred by his own contract and arbitrable under the FAA, the Bankruptcy Court and/or District Court should have dismissed all of Plaintiff's claims with prejudice. Although the FAA provides for a stay of court proceedings "until such arbitration has been had in accordance with the terms of the agreement," 9 U.S.C. § 3, courts routinely dismiss cases where all of the claims are subject to arbitration, <u>even without the benefit of an express covenant-not-to-sue</u> **such as the one Mr. Cummings drafted and signed**. *See Arnold v. Arnold Corp. Printed Commc'ns for Bus.*, 920 F.2d 1269, 1275–76 (6th Cir. 1990) (holding that it was not "error for the district court to dismiss the complaint" after ordering arbitration); *Dean v. Draughons Jr. Coll., Inc.*, 917 F. Supp. 2d 751, 764 (M.D. Tenn. 2013); *Allen v. Tenet Healthcare Corp.*, 370 F. Supp. 2d 682 (M.D. Tenn. 2005) (Trauger, J.) (dismissing plaintiff's claims with prejudice

where all claims were subject to binding arbitration). *See also Ozormoor v. T-Mobile USA, Inc.*, 354 F. App'x 972, 975 (6th Cir. 2009) (rejecting argument that the FAA requires district courts to stay suits pending arbitration rather than dismiss them).

The Sixth Circuit Court of Appeals has stated that "[t]he weight of authority clearly supports dismissal of the case when all of the issues raised in the district court must be submitted to arbitration." *Green v. Ameritech Corp.*, 200 F.3d 967, 973 (6th Cir. 2000); *SL Tennessee LLC v. Ochiai Georgia*, LLC, No. 3:11-cv-340, 2012 WL 381338, at *7–8 (E.D. Tenn. Feb. 6, 2012) ("[W]hen the court determines that all the claims in a cause of action are to be submitted to arbitration, it may dismiss, rather than stay the action because staying the action will serve no purpose."); *see also Asbell v. Educ. Affiliates*, No. 3:12-cv-00579, 2013 WL 1775078, at *18 (M.D. Tenn. Apr. 25, 2013) (dismissing case).

The necessity for a dismissal with prejudice is further underscored here, where Mr. Cummings – a sophisticated lawyer – drafted and inserted a clause in the very contract he now seeks to litigate which **expressly** states that, "neither the client nor the attorneys in this Attorney-Client relationship can file litigation over or about any alleged or real dispute within the Attorney-Client relationship." (Appendix to Appellant's Opening Brief, RE

12, Page ID # 5497). Mr. Cummings' apparent disregard for the sanctity of his own signed representations aside, he has simply contracted himself out of this courtroom.

## F. The Bankruptcy Court Abused its Discretion By Substituting Its Arguments for the Litigants' in Violation of the Party Presentation Rule.

Perhaps most troubling, the Bankruptcy Court (which was also subject to multiple appeals over its *ex parte* communications about parties in the underlying bankruptcy matter and refusal to disclose the contents of the same) adjudicated this motion not upon the briefs presented, nor upon arguments presented by any party, but rather, upon arguments the Court itself formulated. The Bankruptcy Court overruled the parties' unanimous agreement to arbitrate this matter in favor of that Court's own position—which was not raised by any party—that the Bankruptcy Court alone must exercise authority over this case. (See, Appendix to Appellant's Opening Brief, RE 12, Page ID # 5634-5636).

In *U.S. v. Sineneng-Smith*, 590 U.S. 371, 140 S.Ct. 157, 5206 L.Ed.2d 866 (2020) the United States Supreme Court held that the Ninth Circuit Court of Appeals had, by soliciting *amicus* briefs from non-profit organizations and then relying on those *amici* rather than the arguments of

the defendant, violated the party presentation rule so drastically as to constitute an abuse of discretion. *See*, *Sineneng-Smith*, 590 U.S. at 379-380.

The departure by the Bankruptcy Court here arguably went further than the Ninth Circuit had in *Sineneng-Smith*. In that case, the *amicus* briefs elaborated and enlarged the scope of arguments already raised by the defendant-appellant, rather than creating new arguments whole-cloth. *Id*. at 379. Put succinctly, appellant Sineneng-Smith had argued that her prosecution under 8 U.S.C. § 1324 violated the First Amendment as applied, but the *amici* argued more broadly that the statute violated the First Amendment on its face. Sinenen-Smith subsequently adopted the *amici* argument in a redrafted appeal. *Id*. at 377-380.

Here, the Bankruptcy Court relied upon an argument that was never raised by any party, never raised in any *amicus* brief, and not subsequently adopted by a party. If the Ninth's Circuit's solicitation of, and reliance upon, *amici* arguments that elaborated upon a party's arguments was an abuse of discretion, it is hard to see how the Bankruptcy Court's reliance on an argument entirely of its own creation did not. Furthermore, "[n]o extraordinary circumstances justified" the Bankruptcy Court's intercession. *Id*. at 379. The Bankruptcy Court abused its discretion, and should be reversed.

It is worth considering how this exercise of power disconnects litigants from any meaningful judicial oversight: Brett Keefer hired a lawyer, Brian Cummings of Cummings Manookian, to represent him. Mr. Cummings insisted that no controversy over that representation ever be litigated in a court of law, instead favoring arbitration. Mr. Keefer agreed. In motion practice, Brian Cummings did not contest the validity of that agreement; and Cummings Manookian did not even respond. Bankruptcy Judge Charles M. Walker then decided to retain the case on grounds no one had raised, and only after he had expressed extreme irritation at the moving parties for seeking his removal in other core proceedings in this matter.

"In our adversarial system of adjudication, we follow the principle of party presentation." *United States v. Sineneng-Smith*, 140 S. Ct. 1575, 1579 (2020). "As this Court stated in *Greenlaw v. United States*, 554 U.S. 237, 128 S.Ct. 2559, 171 L.Ed.2d 399 (2008), 'in both civil and criminal cases, in the first instance and on appeal …, we rely on the parties to frame the issues for decision and assign to courts the role of neutral arbiter of matters the parties present.' " *Id.* at 243, 128 S.Ct. 2559.

Judge Walker's rulings are inconsistent with the Party Presentation Rule. Parties, in our adversarial system of justice, make arguments on their

own behalf, not courts. But here, that is precisely what the Court has done and attempts to do.

> As federal courts do not have "carte blanche to depart from the principle of party presentation basic to our adversary system," it is an "abuse of discretion" for a court "to override a [party's] deliberate waiver."

> *Wood v. Milyard*, 566 U.S. at 472–73, 132 S. Ct. at 1833–34 (quotations omitted).

Likewise, where the Trustee in this case directly refused to respond to Appellants' Motion to Dismiss, "waiver directly implicates the power of the parties to control the course of the litigation; if a party affirmatively and intentionally relinquishes an issue, then courts must respect that decision." *United States v. Campbell*, 26 F.4th 860, 872 (11th Cir. 2022)

Simply put, the Trustee failed to take any position whatsoever on Appellants' properly filed Motion to Dismiss. The Trustee failed to do so, because there was no response to be made – either in the Bankruptcy trial court or here. Brian Cummings and Cummings Manookian unambiguously agreed – indeed demanded – that any dispute related to the claims presented here be arbitrated. The Bankruptcy Court's reliance on arguments not presented by those parties constituted an abuse of discretion and provides an independent basis for reversal.

**G.    The District Court Erred By Failing to Consider, Address, or Adjudicate the Bankruptcy Court's Violation of the Party Presentation Rule.**

The District Court failed in its oversight role by ignoring, without analysis or explanation, the glaring appearance of impropriety created by the Bankruptcy Court's violation of the party presentation rule and reliance on its own arguments rather than those of the parties.

Appellants raised the Bankruptcy Court's violation of the party presentation rule in its Opening Brief (Appellants Opening Brief, RE 12, Page ID # 5422-5424), yet the District Court ignored the argument. The District Court wrote:

> In their briefs to this court, the appellants make no effort even to address the Bankruptcy Judges findings or to argue that he abused his discretion. Instead, they continue to reiterate the arguments they made in the Bankruptcy Court: that Cummings contracted out of the right to bring a lawsuit and must arbitrate instead and that the arbitration provisions are sufficiently broad to cover his dispute with Hagh and the Debtor as well. The appellants do not address the impact of arbitration on the bankruptcy estate or point to any error on the part of the Bankruptcy Judge in exercising his discretion.

(Order, RE 18, Page ID # 5707). This is an inaccurate restatement of the Appellants' Brief, which stated, as a section heading, "The Court Erred By Substituting Its Arguments for the Litigants' in Violation of the Party

Presentation Rule," (Appellants Opening Brief, RE 12, Page ID # 5422) and argued the point at much the same length as it has been argued above.

The District Court did not consider, adjudicate, or even mention this argument—the Memorandum and Order makes no reference to party presentation at all. Instead, the Court erased Appellants' party-presentation argument—which raised a clear contention of error on the part of the Bankruptcy Court—and then rebuked the Appellants for their purported failure to "point to any error on the part of the Bankruptcy Judge in exercising his discretion." (Order, RE 18, Page ID # 5707). The District Court's ruling disregards a key contention by Appellants and, perhaps worse, pretends the contention was never raised. The Order should be reversed.

## VIII. CONCLUSION

For the foregoing reasons, Appellants respectfully request that the Court reverse the District Court's Order denying Appellants' Motion to Dismiss and/or Compel Arbitration.

Date: October 9, 2024                    Respectfully submitted,

                                        /s/ John Spragens
                                        John Spragens (TN Bar No. 31445)
                                        Spragens Law PLC
                                        311 22nd Ave. N.

Nashville, TN 37203
T: (615) 983-8900
F: (615) 682-8533
john@spragenslaw.com

*Attorney for Appellants*

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(a)(7)(C), I hereby certify that this brief complies with the type-volume limitation in Rule 32 because, as counted by the Microsoft Word count tool, this brief contains 6,129 words. This brief complies with the typeface requirements in Rule 32(a)(5)(A) and the type-style requirements in Rule 32(a)(6) because this brief has been prepared in proportionally spaced 14-point Georgia font.

Dated: October 9, 2024.

/s/ John Spragens

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing Appellants' Opening Brief was filed October 9, 2024 and served electronically upon the following parties in interest as indicated on the receipt issued by the Court's electronic filing system:

Elizabeth S. Tipping
Neal & Harwell, PLC
1201 Demonbreun Street
Suite 1000
Nashville, TN 37203
(615) 244-1713
etipping@nealharwell.com

*Attorney for Appellee Brian Cummings*


Phillip G. Young , Jr.
Thompson Burton PLLC
1801 West End Avenue
Suite 1550
Nashville, TN 37203
(615) 465-6008
Fax: (615) 807-3048
phillip@thompsonburton.com

*Attorney for Trustee Jeanne Burton*




/s/ John Spragens

# ADDENDUM

Pursuant to 6 Cir. R. 28(b)(1)(A)(i), Appellant hereby designates the following relevant documents from the originating court:

- All documents listed in the Designation of Record on Appeal, RE 21 (No. 3:23-cv-00961 M.D. Tenn.) (July 17, 2024), PageID# 5715-5716, specifically including:

- RE 12 (No. 3:23-cv-00961 M.D. Tenn.) (Nov. 13, 2023), PageID# 5392-5426;

- RE 17 (No. 3:23-cv-00961 M.D. Tenn.) (Jan. 12, 2024), PageID# 5695-5700;

- RE 18 (No. 3:23-cv-00961 M.D. Tenn.) (June 17, 2024), PageID# 5701-5709; and

- Transcript of Aug. 30, 2023 adversary proceeding hearing on motion to dismiss.