Case No. 24-5606

_____

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

_____

BRETTON KEEFER and AFSOON HAGH,
Appellants

v.

BRIAN CUMMINGS AND CUMMINGS MANOOKIAN, PLLC,
Appellees

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF TENNESSEE (NASHVILLE)
Case No. 3:23-cv-00961

_____

BRIEF OF THE APPELLEE,
JEANNE ANN BURTON, CH. 7 TRUSTEE

_____

Phillip G. Young, Jr.
THOMPSON BURTON PLLC
6100 Tower Circle, Suite 200
Franklin, Tennessee 37067
Tel:  615-465-6000
phillip@thompsonburton.com

# TABLE OF CONTENTS

STATEMENT REGARDING ORAL ARGUMENT ....................................1

JURISDICTIONAL STATEMENT...............................................2

STATEMENT OF ISSUES...................................................6

STATEMENT OF THE CASE ................................................7

SUMMARY OF ARGUMENT ................................................11

STANDARD OF REVIEW .................................................14

ARGUMENT .............................................................16

    A.   Appellants Waived the Issue of Whether the Bankruptcy
Code's Countervailing Policy Trumps the Federal
Arbitration Act in Deciding This Core Proceeding....................18

    B.   The Bankruptcy Court Did Not Abuse Its Discretion in
Refusing to Enforce the Arbitration Agreement, Because the
Bankruptcy Code's Underlying Purpose Inherently Conflicts
with the Federal Arbitration Act in This Case. ..........................19

        1.   This proceeding involves a core issue, which Appellants
never contest. ......................................................19

        2.   Arbitrating this core issue inherently conflicts with the
Bankruptcy Code. ...............................................20

    C.   No Party-Presentation Rule Error Occurred Here When the
Bankruptcy Court's Reasoning Hinged on the Parties'
Arguments. ..................................................................25

CONCLUSION ...........................................................27

# TABLE OF AUTHORITIES

## Cases

*Bannister v. Knox Cnty. Bd. of Educ.*,
   49 F.4th 1000 (6th Cir. 2022) ...........................................................18

*Dean Witter Reynolds, Inc. v. Byrd*,
   470 U.S. 213 (1985)..........................................................................16

*In re Anderson*,
   884 F.3d 382 (2d Cir. 2018)...................................................... *passim*

*In re Bagsby*,
   40 F.4th 740 (6th Cir. 2022) ........................................................15, 25

*In re Bavelis*,
   773 F.3d 148 (6th Cir. 2014) ...........................................................20

*In re Eber*,
   687 F.3d 1123 (9th Cir. 2012) .........................................11, 17, 19, 22

*In re Elec. Mach. Enters., Inc.*,
   479 F.3d 791 (11th Cir. 2007) .....................................................14, 20

*In re F&T Contractors, Inc.*,
   649 F.2d 1229 (6th Cir. 1981) ....................................................14, 24

*In re Henry*,
   944 F.3d 587 (5th Cir. 2019) ...........................................................16

*In re Lindsey*,
   726 F.3d 857 (6th Cir. 2013) ...........................................................2, 3

*In re M.J. Waterman & Assocs., Inc.*,
   227 F.3d 604 (6th Cir. 2000) ...........................................................14

*In re M.T.G., Inc.*,
   403 F.3d 410 (6th Cir. 2005) .............................................................2

*In re Murray Energy Holdings Co.*,
    654 B.R. 469 (Bankr. S.D. Ohio 2023)................................................11

*In re Muskegon Motor Specialties Co.*,
    313 F.2d 841 (6th Cir. 1963) ..............................................................15

*In re Nat'l Gypsum Co.*,
    118 F.3d 1056 (5th Cir. 1997) ......................................................11, 17

*In re No Place Like Home, Inc.*,
    559 B.R. 863 (Bankr. W.D. Tenn. 2016)................................21, 22, 24

*In re Nu-Kote Holding, Inc.*,
    257 B.R. 855 (Bankr. M.D. Tenn. 2001) .........................20, 21, 23, 24

*In re Patriot Solar Group, LLC*,
    569 B.R. 451 (W.D. Mich. 2017) .....................................14, 17, 20, 23

*In re Teter*,
    90 F.4th 493 (6th Cir. 2024) .........................................................19, 20

*In re Wade*,
    523 B.R. 594 (Bankr. W.D. Tenn. 2014)................................... *passim*

*In re White Mountain Mining Co.*,
    403 F.3d 164 (4th Cir. 2005) ..............................................................23

*In re Woodberry*,
    No. 21-1775, 2022 WL 3449216, (6th Cir. Aug. 12, 2022) ................2

*Jackson v. City of Cleveland*,
    64 F.4th 736 (6th Cir. 2023) ................................................................2

*MBNA Am. Bank, N.A. v. Hill*,
    436 F.3d 104 (2d Cir. 2006)....................................................... *passim*

*Moody v. NetChoice, LLC*,
    144 S. Ct. 2383 (2024)........................................................................27

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
　　460 U.S. 1, 10 (1983) ................................................................3, 11, 16

*Moses v. CashCall, Inc.*,
　　781 F.3d 63 (4th Cir. 2015) ...........................................................14, 24

*Odell v. Kalitta Air, LLC*,
　　107 F.4th 523 (6th Cir. 2024) ...............................................................5

*Shearson/Am. Express, Inc. v. McMahon*,
　　482 U.S. 220 (1987) ................................................................... *passim*

*Simon v. Pfizer Inc.*,
　　398 F.3d 765, n.6 (6th Cir. 2005) ........................................................4

*Turi v. Main Street Adoption Sers., LLP*, \
　　633 F.3d 496, 500 (6th Cir. 2011) ........................................................4

*United States ex rel. Dorsa v. Miraca Life Scis., Inc.*,
　　983 F.3d 885 (6th Cir. 2020) ...........................................................3, 4

*United States v. Allen*,
　　93 F.4th 350 (6th Cir. 2024) ...............................................................18

*United States v. Sineneng-Smith*,
　　590 U.S. 371 (2020) ...........................................................................26

**Rules**

Fed. R. Bankr. P. 1001 .........................................................................25

**Statutes**

28 U.S.C. § 157(b)(2)(B) .....................................................................20
28 U.S.C. § 158(a)(1) ............................................................................3
28 U.S.C. § 158(a)(3) ............................................................................3
28 U.S.C. § 158(d)(1) ............................................................................2
28 U.S.C. § 158(d)(2) .........................................................................2, 3
9 U.S.C. § 16(a) ...................................................................................3
9 U.S.C. § 16(a)(1)(A)-(B) ...................................................................4
Federal Arbitration Act, 9 U.S.C. § 1, et seq ................................11, 16
United States Bankruptcy Code, 11 U.S.C. § 101 et seq. ...................16

**Other Authorities**

*Jurisdiction in Bankruptcy Proceedings: A Test Case for Implied Repeal of the Federal Arbitration Act*, 117 HARV. L. REV. 2296 (2004)............23

**STATEMENT REGARDING ORAL ARGUMENT**

Pursuant to Rule 34 of the Federal Rules of Appellate Procedure and 6th Cir. R. 34, Appellee Jeanne Ann Burton the Chapter 7 waives oral argument in this matter except to the extent that oral argument is granted to Appellants.

## JURISDICTIONAL STATEMENT

This is an appeal from an order of the United States District Court for the Middle District of Tennessee that affirmed a bankruptcy court's order denying Appellants' Motion to Dismiss. There are two jurisdictional paths by which this Court can review bankruptcy court decisions. Here, both are closed. First, it can always review final orders. 28 U.S.C. § 158(d)(1). Second, for all non-final orders, unless a separate law confers jurisdiction, there must be a "certification that the appeal satisfies at least one of three exceptions to the final-order rule" listed in 28 U.S.C. § 158(d)(2). *In re Woodberry*, No. 21-1775, 2022 WL 3449216, at *1 (6th Cir. Aug. 12, 2022) (citing *In re Lindsey*, 726 F.3d 857, 85 8 (6th Cir. 2013)).

This Court lacks jurisdiction to hear this matter by either path. Under the first, this Court "only ha[s] jurisdiction to hear bankruptcy appeals when both the bankruptcy and district courts' orders are final." *In re M.T.G., Inc.*, 403 F.3d 410, 413 (6th Cir. 2005) (quotations omitted); *see* 28 U.S.C. § 158(d)(1). Yet the bankruptcy court's order simply denies Appellants' motion to dismiss, which is *not* a final order. Hr. Transcript, R.12-1, 5636[1]; *Jackson v. City of Cleveland*, 64 F.4th 736, 742 (6th Cir. 2023). This Court's second jurisdictional path is also closed, because "no one sought

---

[1] All record pincites refer to the "Page ID" numbers in the ECF file stamps.

certification under § 158(d)(2)," with Appellants not mentioning it at all here. *In re Lindsey*, 726 F.3d at 858-59; App't Br., 7-8.

Undeterred, Appellants appealed the bankruptcy order to the district court, which recognized it as a non-final order.  Dist. Ct. Order ("Order"), R.18, at 5705; 28 U.S.C. § 158(a)(1), (3).  Still, the district court exercised jurisdiction because it thought that the bankruptcy court had "construed the motion as seeking to compel arbitration."  Order, R.18, at 5705-06.  After all, Appellants' main argument was that the case should be dismissed because an arbitration clause applies to the issue here—attorney's fees.  App't MTD, R.12-1, 5488-93.  Denial of any motion to compel arbitration is "immediately appealable" under the Federal Arbitration Act ("FAA").  Order, at 5706 (citing 9 U.S.C. § 16(a) and *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 10 (1983)).

But the district court is mistaken.  This Court has "not adopted a test for appealability that hinges on the practical effect of a [bankruptcy] court's order." *United States ex rel. Dorsa v. Miraca Life Scis., Inc.*, 983 F.3d 885, 888 (6th Cir. 2020) (quotations omitted) (dismissing appeal for lack of jurisdiction).  Instead, under that "narrow provision" of the FAA, a party can appeal to this Court from (1) "orders refusing a party's request to stay proceedings" pending arbitration, or (2) "orders denying a petition 'for an

order directing that arbitration proceed.'" *Id.* at 886-87 (quoting 9 U.S.C. § 16(a)(1)(A)-(B)). Yet here, the bankruptcy court "did not refuse a request to stay the action to allow for arbitration, nor deny a petition for an order directing the parties to arbitrate." *Id.* It simply "denied [Appellants'] motion to dismiss." *Id.*; *see* Hearing Tr., R.12-1, 5636.

Nor could that court have granted anything different, because Appellants had one request—dismissal. App't MTD, R.12-1, 5493. True, Appellants entitled their caption "motion to dismiss or, in the alternative, to stay." *Id.* at 5473. But titles aside, their argument is *not* that "all of the claims should be referred to an arbitrator," *Turi v. Main Street Adoption Sers., LLP*, 633 F.3d 496, 500 (6th Cir. 2011) (finding jurisdiction), or that "the [c]ourt should stay the action pending arbitration," *Simon v. Pfizer Inc.*, 398 F.3d 765, 770 n.6 (6th Cir. 2005) (same). Rather, they urged the court to dismiss and *not* stay the matter, with the motion's "concluding sentence ask[ing] that the [bankruptcy] court dismiss"—nothing else. *Miraca*, 983 F.3d at 889 (cleaned up); App't MTD, R.12-1, at 5492-93. Even their standard-of-review section mentioned only dismissal standards, *not* FAA motions to compel or stay. App't MTD, R.12-1, at 5485-86. At bottom, "[t]he essence of [Appellants'] motion" distilled to "a request that the court dismiss the action, *not* that the court stay the proceedings or issue an order compelling arbitration." *Miraca*,

4

983 F.3d at 889 (emphasis added). That said, their title's "perfunctory" mention of a stay, "unaccompanied by some effort at developed argumentation," means they "forfeited the claim" and the FAA's appeal exception. *Odell v. Kalitta Air, LLC*, 107 F.4th 523, 532 (6th Cir. 2024) (quotations omitted). With that, the FAA conferred no jurisdiction here to appeal the non-final order of the bankruptcy court to the district court or to this Court.

Absent the FAA, and absent the certification process, this Court lacks jurisdiction to review the bankruptcy court's non-final order. It should therefore dismiss this appeal.

## STATEMENT OF ISSUES

1.    Whether Appellants waived their argument that the bankruptcy court abused its discretion by not arguing it on appeal to the district court and to this Court.

2.    Whether the bankruptcy court abused its discretion in holding that the Bankruptcy Code did not require enforcing an arbitration clause that would have a significant impact on a core issue of a bankruptcy estate.

## STATEMENT OF THE CASE

Appellant Afsoon Hagh and Appellee Brian Cummings previously practiced law at the now-bankrupt law firm Cummings Manookian, PLLC ("Firm"), appearing here by its Chapter 7 trustee, Jeanne Ann Burton.  Bankr. Pet'n, R.5, at 38; State Am. Compl., R.8, at 4752-53.[2]  Before the Firm's bankruptcy, however, a contingency case settled that Ms. Hagh and Mr. Cummings had worked on for their client, Appellant Bretton Keefer.  State Am. Compl., R.8, at 4752-54.  Mr. Keefer got his share of the award, while the rest remained in escrow until the others, including the Firm, could hash out their portions of attorney's fees.[3]  *Id.* at 4759.

As part of the Firm's Chapter 7 case, Trustee Burton filed an adversary proceeding against Ms. Hagh and others to bring certain legal fees, including the fees at issue in this appeal, into the Firm's estate.  Adv. Proc., R.6, at 2223, 2262-74.  Separately, Mr. Cummings sued Ms. Hagh, Trustee Burton, and his former client Mr. Keefer in Tennessee state court seeking a judicial determination as to his claim to the disputed fees.  State Compl., R.8, at 4736.

---

[2] *See* note 1, *supra*.

[3] As the district court noted, Mr. Keefer's interest here remains "unclear," having "received all funds to which he is entitled and ha[ving] no inherent interest in how the attorney's fees" are "divided among the other interested parties."  Order, R.18, at 5703 n.4.

Because that case related to the Firm's bankruptcy estate, Trustee Burton removed the case to federal court and moved the district court to refer the case to bankruptcy court.  Notice of Removal, R.8, at 4784-85; Mot. to Refer, R. 8, at 4830-32.  The district court granted that motion.  Referral Order, R.8, at 4735.

Ms. Hagh and Mr. Keefer then moved the bankruptcy court to dismiss the removed case because, they contend, an engagement letter between Mr. Keefer and the Firm mandated arbitration per the Federal Arbitration Act. App't MTD, R.12-1, 5488-93.

The bankruptcy court disagreed, for two reasons.  Bankr. Order, R.12-1, at 5611; Hearing Tr., R.12-1, at 5612.  First, because Ms. Hagh never submitted the arbitration agreement into evidence as required by that court's local rules, the court had nothing but the Code to consider.  Hearing Tr., R.12-1, at 5614, 5634; *see* L.R. 9014-1(d)(1)(c) (Bankr. M.D. Tenn. 2016).  Second, even if an agreement existed, the court refused to blindly allow an arbitration mandate to dictate the outcome of a core bankruptcy proceeding.  Otherwise, "debtor-creditor rights [would be] contingent upon an arbitrator's ruling, rather than the ruling of the bankruptcy judge."  Hearing Tr., R.12-1, at 5635.

Instead, the court considered seven factors courts routinely use to decide whether to enforce the Bankruptcy Code or an arbitration provision under the Federal Arbitration Act:

1. Whether the arbitration proceeding was commenced prepetition: "It was not," *id.* at 5635—favoring the Bankruptcy Code;

2. Whether the party wanting arbitration has formally appeared in the bankruptcy case: Yes, *id.*— favoring the Bankruptcy Code;

3. Whether the arbitrator has special knowledge or expertise which would help resolve the case: No, "because no arbitration ha[d] been commenced," *id.*— favoring the Bankruptcy Code;

4. Whether there is a strong likelihood that the debtor will confirm a plan: "[I]napplicable" in a Chapter 7 case, *id.*—neutral;

5. Whether there is an international arbitration agreement provision: "[T]here is not," *id.*— favoring the Bankruptcy Code;

6. Whether allowing arbitration would likely result in piecemeal litigation: A "[s]ignificant likelihood exists," because Ms. Hagh's claims are "directly related" to the "main bankruptcy case" and "the trustee's claim in her related adversary proceeding," *id.* at 5635-36—favoring the Bankruptcy Code; and

7. Whether and what kind of impact arbitration will have on the bankruptcy estate: For the same reason, a "potentially very significant" impact could occur, *id* at 5636— favoring the Bankruptcy Code.

Ultimately, besides one neutral factor, the rest all counseled using the Bankruptcy Code, with the sixth and seventh factors truly "carry[ing] the day and outweigh[ing] all other issues." *Id.* As such, the bankruptcy court denied Ms. Hagh's motion, refusing to follow an arbitration provision that "would

9

frustrate the purpose of the Bankruptcy Code and [the] [c]ourt's ability to retain jurisdiction over the bankruptcy process." *Id.*; Bankr. Order, R.12-1, at 5611.

Ms. Hagh and Mr. Keefer appealed to the district court. Not. of App. & Stmn't of Elect'n, R.12-1, at 5639. It affirmed, finding the bankruptcy court's decision "reasoned and well thought out" and then walking through the same analysis. Order, R.18, at 5708. Because Appellants "provided no basis for overruling" the bankruptcy court's order, the district court affirmed denying the motion to dismiss. *Id.* This appeal followed.

## SUMMARY OF ARGUMENT

Congress created the Bankruptcy Code as a centralizing tool—centralize all of a debtor's financial matters into one proceeding before the bankruptcy court. 11 U.S.C. § 101, et seq; *In re Murray Energy Holdings Co.*, 654 B.R. 469, 492 (Bankr. S.D. Ohio 2023) (citing *In re Anderson*, 884 F.3d 382, 389 (2d Cir. 2018), and *In re Nat'l Gypsum Co.*, 118 F.3d 1056, 1069 (5th Cir. 1997)). Doing that makes sense. It ensures accuracy, gives full disclosure, reduces inconsistencies, and saves time.

In tension with the Bankruptcy Code's centralization efforts, however, is the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, et seq, which would, in theory, siphon matters away from bankruptcy courts. *In re Eber*, 687 F.3d 1123, 1125 (9th Cir. 2012); *In re Wade*, 523 B.R. 594, 598 (Bankr. W.D. Tenn. 2014) (citing *id.*). To be sure, federal policy favors arbitrating. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). Yet the Supreme Court has placed limits on that policy: If arbitrating risks "inherent conflict" with another statute's "underlying purposes," the other statute prevails—*not* the FAA. *Shearson/Am. Express, Inc. v. McMahon*, 482 U.S. 220, 227 (1987).

This appeal, then, is about the Bankruptcy Code's supremacy over a contract's arbitration provision, a provision that threatens piecemeal litigation

about a bankrupt law firm's core asset—attorney's fees.  Those fees came from Appellant Afsoon Hagh and Appellee Brian Cummings settling a contingency case for their client, Appellant Bretton Keefer, while working at their prior (and now bankrupt) firm, Appellee Cummings Manookian, PLLC ("Firm").  Mr. Keefer got his share of the award; the rest remains in escrow for the others to figure out their attorney's fees.

Yet, despite Trustee Burton filing an adversary proceeding to recover the estate's fees, which everyone agrees is a core bankruptcy proceeding, Ms. Hagh resists the Bankruptcy Code's control to centralize the matter.  Rather, she insists that the FAA requires the lawyers and Firm to arbitrate.  After all, Mr. Keefer's engagement letter with Ms. Hagh and Mr. Cummings mandates arbitration for issues arising from the representation.  But that argument sinks under any reading of the factors courts use to decide whether to uphold the Bankruptcy Code over the FAA, which point in one direction: The two laws inherently conflict here, making the Bankruptcy Code control.  *McMahon*, 482 U.S. at 227.

Appellants nowhere explained below how the bankruptcy court erred in agreeing with that conclusion (forfeiting the issue).  On appeal, they again never explain the error, nor why the district court also agreed (again, forfeiting it).  They instead focus on whether the bankruptcy court violated the party-

presentation rule by relying on the Supreme Court's inherent-conflict framework—the same framework Appellees presented in opposing Appellants' motion to dismiss, meaning no violation happened.

In short, the district court and the bankruptcy court were correct: The Bankruptcy Code does not bow to arbitration provisions like this that inherently conflict with its underlying purpose.  This Court should affirm.

## STANDARD OF REVIEW

This Court "directly review[s] the bankruptcy court's decision rather than the district court's review of the bankruptcy court's decision." *In re M.J. Waterman & Assocs., Inc.*, 227 F.3d 604, 607 (6th Cir. 2000). While this Court has yet to address the Federal Arbitration Act's interaction with the Bankruptcy Code post the Supreme Court's *McMahon* decision, others have. They agree that, if "the dispute is a non-core proceeding, a court is generally without discretion" to enforce an arbitration mandate. *In re Patriot Solar Group, LLC*, 569 B.R. 451, 457-58 (W.D. Mich. 2017) (citing *In re Elec. Mach. Enters., Inc.*, 479 F.3d 791, 796 (11th Cir. 2007)); *see MBNA Am. Bank, N.A. v. Hill*, 436 F.3d 104, 108 (2d Cir. 2006) (same). At the bankruptcy court, Appellants "presume[d]" that this dispute involves a core proceeding. Order, R.18, at 5707. Nowhere do they argue otherwise here, forfeiting the issue. *See generally*, App't Br; *infra*, Sec.B.1.

For core proceedings like this, most circuits hold that the bankruptcy court's decision to deny arbitration is reviewed for abuse of discretion upon finding that the arbitration provision "inherent[ly] conflicts" with the Bankruptcy Code. *See, e.g.*, *In re Anderson*, 884 F.3d 382, 388 (2d Cir. 2018); *Moses v. CashCall, Inc.*, 781 F.3d 63, 71-72 (4th Cir. 2015); *In re Wade*, 523 B.R. 594, 603-04, 609 (Bankr. W.D. Tenn. 2014) (citing *In re F & T*

*Contractors, Inc.*, 649 F.2d 1229, 1232-33 (6th Cir. 1981), and *In re Muskegon Motor Specialties Co.*, 313 F.2d 841, 842 (6th Cir. 1963)).  An abuse of discretion happens only if this Court "has a definite and firm conviction that the court below committed a clear error of judgment."  *In re Bagsby*, 40 F.4th 740, 745 (6th Cir. 2022) (citations omitted).

# ARGUMENT

No one here disagrees that the Federal Arbitration Act, 9 U.S.C. § 1, et seq, creates a "liberal federal policy favoring arbitration agreements." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). But that Act "is not the only statute on the books," *In re Henry*, 944 F.3d 587, 590 (5th Cir. 2019), and so, its arbitration preference "is not absolute," *In re Anderson*, 884 F.3d 382, 388 (2d Cir. 2018). Rather, it takes effect *only* "absent a countervailing policy manifested in another federal statute." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221 (1985). Following the Supreme Court's *McMahon* opinion, that countervailing policy must emanate from Congress's "command," deduced by considering (1) the other statute's text, (2) the other statute's history, and (3) whether an "inherent conflict" exists between the FAA and the other statute's "underlying purposes." *Shearson/Am. Express, Inc. v. McMahon*, 482 U.S. 220, 227 (1987).

The Bankruptcy Code provides that countervailing policy here, especially when dealing with issues core to a bankruptcy proceeding. 11 U.S.C. § 101, et seq. That is exactly what the bankruptcy court held. With Appellants never opposing this holding, they forfeit the issue, ending this appeal. *See generally*, App't Br.

Nor could they have argued otherwise. While, post-*McMahon*, this Court "has not considered the intersection of the Arbitration Act and the Bankruptcy Code," *In re Patriot Solar Group, LLC*, 569 B.R. 451, 457 (W.D. Mich. 2017); *see* Order, R.18, at 5706, the Code's countervailing policy remains well known: "protection of debtors and creditors from piecemeal litigation" by the "centralization of disputes concerning the debtor's legal obligation," *In re Wade*, 523 B.R. 594, 607 (Bankr. W.D. Tenn. 2014) (quoting *In re Eber*, 687 F.3d 1123, 1131 (9th Cir. 2012)); *see MBNA Am. Bank, N.A. v. Hill*, 436 F.3d 104, 108 (2d Cir. 2006) (citing *In re Nat'l Gypsum Co.*, 118 F.3d 1056, 1069 (5th Cir. 1997) (stating same underlying purpose)). Plainly, stripping bankruptcy judges' longstanding and exclusive jurisdiction over the Firm's core property because of a one-off arbitration clause inherently conflicts with that underlying purpose of the Bankruptcy Code. *McMahon*, 482 U.S. at 227.[4]

The bankruptcy court and district court both recognized that. This Court should affirm.

---

[4] Although no party argued below that the Bankruptcy Code's text and history override the FAA, this Court can still decide the issue based only on an inherent conflict existing. *See, e.g.*, *In re Anderson*, 884 F.3d 382, 388-89 (2d Cir. 2018) (only focusing on "inherent conflict" analysis because all parties forfeited text-history argument by not raising it below).

**A.    Appellants Waived the Issue of Whether the Bankruptcy Code's Countervailing Policy Trumps the Federal Arbitration Act in Deciding This Core Proceeding.**

This appeal can end quickly because Appellants forfeited the issue of whether the Bankruptcy Code inherently conflicts with the Federal Arbitration Act, "even if [they did] so unintentionally." *Bannister v. Knox Cnty. Bd. of Educ.*, 49 F.4th 1000, 1011 (6th Cir. 2022).  At the district court, they made "no effort even to address the Bankruptcy Judge's findings or to argue that he abused his discretion" in deferring to the Code over the FAA.  Order, R.18, at 5707.  They never "address[ed] the impact of arbitration on the bankruptcy estate" or "point[ed] to any error" on that point.  *Id.*

Nor can Appellants cling to this Court's carveout to review forfeited arguments for "exceptional situations."  *Bannister*, 49 F.4th at 1012.  If forfeiting once was not enough, they did the same thing again here, not attempting to reconcile the two competing statutes at all.  *See generally*, App't Br.  Raising that issue "for the first time in a reply brief" is not an option. *United States v. Allen*, 93 F.4th 350, 358 (6th Cir. 2024) (citation omitted).

As a workaround, Appellants say they did address the bankruptcy court's abuse of discretion by "argu[ing] the point at much the same length" below as they have done here.  App't Br. at 29-30.  Not quite.  The only "abuse of discretion" argument Appellants made is that the bankruptcy court violated

"the party presentation rule," *id.* at 25-30; *but see infra* Sec.C., not that it abused its discretion by deferring to the Bankruptcy Code over the FAA—the bedrock of the bankruptcy court's order.  Tr. 23:23, R.12-1, at 5634-36.

Without addressing that, Appellants forfeited the issue, ending this appeal.  This Court should affirm.

**B.      The Bankruptcy Court Did Not Abuse Its Discretion in Refusing to Enforce the Arbitration Agreement, Because the Bankruptcy Code's Underlying Purpose Inherently Conflicts with the Federal Arbitration Act in This Case.**

Every bit of the Bankruptcy Code "inherent[ly] conflict[s]" with the FAA requiring arbitration of a core issue in this Chapter 7 action.  *McMahon*, 482 U.S. at 227.

**1.  This proceeding involves a core issue, which Appellants never contest.**

Up front, the "initial dividing line on FAA applicability" is whether the proceeding concerns a core or non-core proceeding.  *In re Wade*, 523 B.R. at 607.  A "core" proceeding means one either "created by federal bankruptcy law" or that "could not exist outside of the bankruptcy."  *In re Teter*, 90 F.4th 493, 497 (6th Cir. 2024) (quotations omitted).  Whereas "non-core" means basically everything else, *id.*, and things "tangentially related to a bankruptcy case," *In re Wade*, 523 B.R. at 607 (quoting *In re Eber*, 687 F.3d at 1130, n.6).  But here, Appellants "presum[ed]" that this is a core proceeding, with the

bankruptcy court and district court "accept[ing] that proposition."  Order, R.18, at 5707.  That settles it, at least for this case.  *In re Anderson*, 884 F.3d at 388 (turning to main FAA analysis after parties "agree[d] that [the] claim is a 'core' proceeding").  In short, "without object[ing]" to the issue, not only have they "in effect consented to the bankruptcy court's handling of the matter," but they forfeited the issue for FAA purposes, again unable to raise it on reply.  *In re Teter*, 90 F.4th at 497-98.

Yet, for good measure, this indeed qualifies as a core proceeding—resolving an attorneys' fee claim against the Firm's estate.  *In re Bavelis*, 773 F.3d 148, 156 (6th Cir. 2014) (citing 28 U.S.C. § 157(b)(2)(B)).

### 2. Arbitrating this core issue inherently conflicts with the Bankruptcy Code.

For "core proceedings" like this, courts then consider "whether enforcement of the arbitration provisions . . . inherently conflict with the underlying purposes of the Bankruptcy Code."  *In re Patriot*, 569 B.R. at 458-59 (citing *In re Elec. Mach. Enters., Inc.*, 479 F.3d 791, 796 (11th Cir. 2007), and *Hill*, 436 F.3d at 108).  Across the board, no "uniformly-adopted test" exists to determine "inherent conflicts," with it instead always being a "case-by-case" decision.  *Id.* at 459 (citing *Hill*, 436 F.3d at 108).  To that end, most courts have considered a host of factors that should guide this Court.  *Id.*; *In re Nu-Kote Holding, Inc.*, 257 B.R. 855, 863 (Bankr. M.D. Tenn. 2001) (citing

factors considered in six other courts); *see also In re No Place Like Home, Inc.*, 559 B.R. 863, 877 (Bankr. W.D. Tenn. 2016) (same factors); *In re Wade*, 523 B.R. at 612 (same).

The bankruptcy court did the same here, considering seven common factors:

1) Whether the arbitration proceeding was commenced prepetition;

2) Whether the party seeking arbitration has formally appeared in the bankruptcy case;

3) Whether the arbitrator has special knowledge or expertise which would be helpful to the resolution of the disputed issues;

4) Whether there is a strong likelihood that the debtor will confirm a plan;

5) Whether there is an international arbitration provision;

6) Whether there is a likelihood of piecemeal litigation;

7) What the impact of arbitration will have on the bankruptcy estate.

Hearing Tr., R.12-1, at 5635-36 (citing *In re Wade*, 523 B.R. at 612 (quoting *In re Nu–Kote Holding, Inc.*, 257 B.R. at 863)). Taking those together, at least here, "arbitration would frustrate the purpose of the Bankruptcy Code and [that] [c]ourt's ability to retain jurisdiction over the bankruptcy process." *Id.* at 5636.

**Factor 1.** *Whether arbitration commenced prepetition*: "It was not," favoring the Bankruptcy Code. *Id.* at 5635. Whereas, if the parties'

21

arbitration "had proceeded" already, continuing to arbitrate would serve judicial economy by having an arbitrator "already familiar with the facts." *In re Eber* 687 F.3d at 1132 (refusing to send core issue to arbitration that had not begun arbitration).

**Factor 2.** *Whether arbitration advocate appeared in bankruptcy court***:**  Yes, Appellants have obviously appeared, favoring the Bankruptcy Code.  Hearing Tr., R.12-1, at 5635.  Although, because Appellants "had a prior State Court action filed," that "arguably demonstrates that they did not expressly consent to the jurisdiction of the bankruptcy court." *In re No Place Like Home*, 559 B.R. at 878.  Without more, this factor remains neutral.

**Factor 3.** *Whether arbitrator's special knowledge or expertise would help***:**  No, because "[n]o arbiter was appointed."  Hearing Tr., R.12-1, at 5635.  Besides, Appellants never argued that they need an expert arbitrator to resolve this standard, run-of-the-mill attorney's fee issue.  *Cf. In re No Place Like Home*, 559 B.R. at 877 (valuing expert arbitrator for "complex . . wage and hour law" issue).  Instead, the issue is rather "ordinary and the primary disputes are legal," making arbitration "lose[] much of its luster." *In re Wade*, 523 B.R. at 613.

**Factor 4.** *Likelihood that debtor will confirm a plan***:**  "[I]napplicable" in this Chapter 7 case and, thus, neutral.  Hearing Tr., R.12-1, at 5635.

**Factor 5.** ***Whether international arbitration agreement exists***: "[T]here is not" one, *id.*, favoring the Code. *Cf. In re Nu-Kote*, 257 B.R. at 865 (favoring arbitration because parties' agreements involved "an international transaction").

**Factor 6.** ***Likelihood of piecemeal litigation***: Yes, a "[s]ignificant likelihood exists" because the bankruptcy and arbitration would be litigating the same estate's assets at the same time, leaning towards the Code. Hearing Tr., R.12-1, at 5635. In fact, this *de*centralization proves "inconsistent with *centralized* decision-making" the Code envisions for two reasons. *In re White Mountain Mining Co.*, 403 F.3d 164, 169 (4th Cir. 2005) (emphasis added). For one, it forces the Firm "to unnecessarily expend time and resources by having to litigate in two forums." *In re Patriot*, 569 B.R. at 461. More fundamentally, it "make[s] debtor-creditor rights 'contingent upon an arbitrator's ruling' rather than the ruling of the bankruptcy judge assigned to hear the debtor's case." *In re White Mountain*, 403 F.3d at 169-70 (quoting Note, *Jurisdiction in Bankruptcy Proceedings: A Test Case for Implied Repeal of the Federal Arbitration Act*, 117 HARV. L. REV. 2296, 2307 (2004)).

**Factor 7.** ***Impact of arbitration resolution on bankruptcy estate:*** Again, "potentially very significant in this instance," Hearing Tr., R.12-1, at 5636. The estate has *not* "been fully administered," *Hill*, 436 F.3d at 109,

with conflicting arbitration and adversary proceeding results more than a possibility. If an arbitrator awards fees to Ms. Hagh and Mr. Cummings, that directly cuts into the fee amount the bankruptcy court decides for the Firm's estate. Delays to avoid that conflict have their own impact, requiring the bankruptcy court to "await[] an arbitrator's decision rather than proceeding at the case's own natural pace." *In re Wade*, 523 B.R. at 613. Even then, the arbitrator's findings "may be incomplete" for the bankruptcy's purposes. *Id.*

The Fourth Circuit knew this would happen and, so, avoided arbitration lest it cause that "substantial[] interfere[nce]" with the bankruptcy there. *CashCall, Inc.*, 784 F.3d at 73 (citation omitted). Contrast that with the Second Circuit that, in its own Chapter 7 case, only enforced arbitration because, "most importantly," that "bankruptcy case [had] now closed." *Hill*, 436 F.3d at 109-110; *see In re Nu-Kote*, 257 B.R. at 865 (same in Chapter 11 case); *In re No Place Like Home*, 559 B.R. at 878 (same). Even though predating the Supreme Court's *McMahon* framework, this Court once refused to force arbitration that "would have affected the claims of the general creditors" like here. *In re F&T Contractors, Inc.*, 649 F.2d 1229, 1233 (6th Cir. 1981). Not only would it "affect" them, but "those creditors would not have been allowed to participate in the [arbitration] proceeding" at all. *Id.* at 1232.

The Firm's bankruptcy persists, going on five years now, largely thanks to the numerous appeals and recusal motions filed. *See* Bankr. Pet'n, R.5, at 41; Bankr. Docket, R.5, at 22-37. Arbitrating this core issue would once more continue creditors' holding pattern, and delay the administration of the Firm's bankruptcy estate—certainly not the Bankruptcy Code's aim.

At bottom, the scales fall towards upholding the Bankruptcy Code here. While two factors remain neutral, *none* favor dragging out this five-year bankruptcy through arbitrating this core issue. That would just create an inherent conflict with the Bankruptcy Code's promise of a "just, speedy, and inexpensive determination" of the Firm's estate. Fed. R. Bankr. P. 1001. No wonder the bankruptcy court refused to force an arbitration, one that "would frustrate the purpose of the Bankruptcy Code and [that] [c]ourt's ability to retain jurisdiction over the bankruptcy process." Hearing Tr., R.12-1, at 5636. Deferring to one-off arbitration clauses covering the same estate assets before the court was simply not worth compromising the Code's underlying purpose. At the very least, that amounts to no "clear error." *In re Bagsby*, 40 F.4th at 745. This Court should affirm.

## C. No Party-Presentation Rule Error Occurred Here When the Bankruptcy Court's Reasoning Hinged on the Parties' Arguments.

Appellants argue at length that the bankruptcy court violated the party-presentation rule by making up the Bankruptcy Code-versus-FAA argument

*sua sponte.*   App't Br. at 25-30.   They insist that this dichotomy "was not raised by any party."   *Id.* at 25.   Were that true, they might have an argument. But it is not.

That party-presentation rule requires courts to "rely on the parties to frame the issues," with courts only acting as "neutral arbiter[s] of matters the parties present."   *United States v. Sineneng-Smith*, 590 U.S. 371, 375 (2020) (quotations omitted).

The bankruptcy court did that.   It refused to enforce an arbitration agreement because, at least in this case, doing so "would frustrate the purpose of the Bankruptcy Code."   Hearing Tr., R.12-1, at 5636.   That reasoning should not have surprised Appellants; at oral argument, Mr. Cummings merely reiterated his brief's argument on the subject.   *See* Cummings's MTD Resp., R.12-1, at 5533-36.   In "oppos[ing] the motion to dismiss," he insisted that the court "ha[d] exclusive jurisdiction over this matter" and that the "jurisdiction trumps any arbitration provision that might apply."   Hearing Tr., R.12-1, at 5622.   Later, he argued that "it's important for the Court to look at that" issue—"the interplay of the arbitration provision and the Bankruptcy Code."   *Id.* at 5625.   In courts considering the issue, his counsel explained that they "determine whether there's an inherent conflict" between the arbitration clause and the Code.   *Id.* at 5626.   When one exists, "the Bankruptcy Code

trumps the Federal Arbitration Act." *Id.* Likewise, Trustee Burton stressed the "very conflicting results" that the bankruptcy court versus the arbitrator could produce. *Id.* at 5629.

After all that argument, the Bankruptcy Court had plenty to base its ruling on. As a result, "the record does not support [Appellants'] attempt to use the party-presentation rule." *Moody v. NetChoice, LLC*, 144 S. Ct. 2383, 2429 (2024) (Alito, J., concurring in judgment).

## CONCLUSION

This Court should dismiss this appeal for lack of jurisdiction over the bankruptcy court's non-final order. Yet, even on the merits, the Federal Arbitration Act's decentralizing nature in mandating arbitration inherently conflicts with the Bankruptcy Code's underlying purpose in *centralizing* all of a debtor's finances, especially core matters like the attorney's fees here. Appellants never argue otherwise, forfeiting the issue. Separately, because the bankruptcy court's order hinged on the arbitration-versus-bankruptcy code tension—the same one the parties argued before it—the court never violated the party-presentation rule. This Court should affirm.

Respectfully submitted,

/s/ Phillip G. Young, Jr.
Phillip G. Young, Jr.
THOMPSON BURTON PLLC
6100 Tower Circle, Suite 200
Franklin, Tennessee 37067
Tel:  615-465-6000
phillip@thompsonburton.com

**CERTIFICATE OF COMPLAINCE WITH FED. R. APP. P. 32(a)(7)**

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 5,021 words, excluding portions exempted by Fed. R. App. P. 32(f) and 6 Cir. R. 32(b)(1).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word for Mac 2011 in 14-point Times New Roman Font.

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was filed electronically on this 8th day of November 2024.  Notice of this filing will be sent by operation of the Court's electronic filing system to all parties listed below.  Parties may also access this filing through the Court's electronic filing systems.

John Tate Spragens
Spragens Law PLC
311 22nd Ave. N
Nashville, TN 37203


/s/ Phillip G. Young, Jr.
Phillip G. Young, Jr.

# ADDENDUM

Pursuant to 6 Cir. R. 28(b)(1)(A)(i), Appellant hereby designates the following relevant documents from the originating court:

| Document | R. | Pages |
|---|---|---|
| Bankruptcy Docket | 5 | 22-37 |
| Bankruptcy Petition | 5 | 38-42 |
| Adversary Proceeding | 6 | 223-2259 |
| Referral Order | 8 | 4735 |
| State Complaint | 8 | 4736-4746 |
| State Amended Complaint | 8 | 4752-4764 |
| Notice of Removal | 8 | 4784-4785 |
| Motion to Refer | 8 | 4830-4832 |
| Appellants' Motion to Dismiss Adversary Proceeding | 12-1 | 5473-5494 |
| Cummings's Response to Appellants' Motion to Dismiss | 12-1 | 5527-5542 |
| Bankruptcy Court's Order Denying Defendants/Appellants' Motion to Dismiss | 12-1 | 5610-5611 |
| Transcript of Hearing Before the Bankruptcy Court on Motion to Dismiss | 12-1 | 5612-5638 |
| Notice of Appeal and Statement of Election | 12-1 | 5639-5641 |
| Memorandum and Order of the District Court | 18 | 5701-5709 |
| Notice of Appeal | 19 | 5710-5711 |
| USCA Case Number | 20 | |